## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

D'QUINTA ARASTOO UZZLE #279-793,

    Petitioner,

       v.

JOHN S. WOLFE, *et al.*,

    Respondents.

CIVIL NO.: WDQ-12-2557

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM

Pending is D'Quinta Arastoo Uzzle's ("Uzzle") Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Respondents, by their counsel, have filed a response to which Uzzle has replied. After considering the pleadings, exhibits, and applicable law, the Court determines that a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2014).

### Background

Uzzle is challenging his 1998 conviction, after a jury trial in the Circuit Court for Prince George's County, on two counts of first-degree murder and one count of using a handgun in the commission of a crime of violence. ECF No. 7 at 7. Uzzle was sentenced to two consecutive life terms and a consecutive twenty years for the handgun offense. ECF No. 7, Resp. Ex. 6 at 6. [1]

### Facts

At trial, state's witness Kenneth Smith, who is Uzzle's cousin by marriage, testified that on October 12, 1996, at about 4:30 pm he was in the company of Uzzle, Clinton Roberts, and Parris Mickens in Capitol Heights, Maryland. ECF No. 7, Ex. 3 at 130-33. Uzzle argued with

---

[1] References are to Respondents' exhibits docketed at ECF No. 7, unless otherwise indicated.

Mickens about a sexual comment Mickens made to Uzzle's female cousin. *Id.* Following a heated exchange, the group dispersed. *Id.* Later that evening, the four men decided to purchase marijuana. *Id.* Uzzle, after suggesting the group pool their money, pulled out a .375 revolver and fatally shot Roberts and Mickens. *Id.* at 133.

### 1.  Oral Statements to Police

On October 16, 1996, a warrant was issued for Uzzle's arrest. ECF No. 7, Ex. 10 at 15. Uzzle was not located until a "crime solvers tip" on July 21, 1997, alerted Prince George's County Police that he was in jail in Texas under an alias for an unrelated marijuana possession offense. *Id.* On August 21, 1996, Detective Sergeant Dwight Deloatch of the Prince George's County Police Department interviewed Uzzle at the Rockwell County, Texas, Detention Center. *Id.* at 15-20. Uzzle waived extradition and was returned to Maryland. Uzzle spoke to Deloatch again in Prince George's County on October 3, 1997. *Id.*

### 2.  Pretrial Motions Hearing

Trial counsel, Harry Trainor, Esq., moved to suppress Uzzle's August 21, 1996 and October 3, 1997 oral statements to the police at the pre-trial motions hearing held in the Circuit Court for Prince George's County on September 9, 1998. ECF No. 7, Ex. 2. Deloatch testified that on August 21, 1997, he introduced himself to Uzzle in the Texas jail, and read him his *Miranda* [2] rights. *Id.* at 19-24. Uzzle indicated that he understood his rights and did not ask to speak to an attorney. *Id.* Uzzle denied that he was present at the time the shooting occurred. *Id.* at 26-27.

Deloatch testified that on October 3, 1997, he interviewed Uzzle at the Prince George's County Police Homicide Unit. *Id.* at 235-37. .Deloatch advised Uzzle in the same manner as he

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

had done in Texas. *Id.* Uzzle denied any involvement in the crimes. ECF No. 7, Ex. 3 at 38.

Deloatch testified that he could tell by Uzzle's demeanor[3] that he wanted to say something. *Id.*

Additionally, Deloatch testified:

> [W]e continued on talking, and I asked him did he feel sorry for the two guys that were killed, and that's when he made that statement to me-well, he dropped his head, he had tears in his eyes. He made a statement to me, he said yes, he knew he messed up his life.
>
> And he further stated that I had Joe Joe's [Kenneth Smith] statement. And I asked him what he meant by that, he didn't say anything. And he also was sorry for the death of the two guys that were killed. That's what he told me.

ECF No. 7, Ex. 2 at 39.[4] The trial court denied the Motion to Suppress. Uzzle's oral statements

to the police were admitted into evidence at trial. ECF No. 7 at 6-7.

## Procedural History

Uzzle appealed his conviction to the Court of Special Appeals of Maryland. ECF No. 7,

Ex. 7. He presented four allegations of error:

1. Did the trial court abuse its discretion in refusing to ask prospective jurors if they had such strong feelings about people who own guns, strong feelings either for or against gun control, or any specific fear of guns that they would be unable to render a fair and impartial verdict in a case where the evidence showed that the decedent died of a gunshot wound?

2. Did the trial court err in denying appellant's motion to suppress his statement since it was not voluntary?

3. Did the trial court commit a combined error when the court: (1) gave no relief for the discovery violation that occurred when the State failed to supply the results of the voice stress analysis, and (2) when it gave no relief after a State's witness testified about a lie detector test?

---

[3] Deloatch described Uzzle as having "like tears coming to his eyes." ECF No. 7, Ex. 3 at 38.

[4] The Court of Special Appeals of Maryland on direct appeal stated, "[t]he only thing that happened in the October 3 interrogation that was not an essential replay of the August 27 interrogation" that occurred in Texas. (Ex 10, p. 19). "What the appellant told Sergeant Deloatch in Maryland on October 3 was virtually a word-for-word replay of what he had earlier told him in Texas on August 27. (Ex. 10, p. 32).

4. Did the trial court err in sentencing appellant on an offense for which he was not convicted?

ECF No. 7, Ex. 7 at 2. In an unreported opinion filed on October 2, 2003, the Court of Special

Appeals vacated the merger of a second conviction for use of a handgun in a crime of violence

and affirmed Uzzle's remaining convictions. *See Uzzle v. State*, 152 Md. App. 548 (2003); ECF

No. 7, Ex.10.

Uzzle subsequently filed a Petition for a Writ of Certiorari in the Court of Appeals

of Maryland in which he presented the following questions for review:

1. Should this Court review the decision of the Court of Special Appeals, when in a reported decision, that Court declined to follow *State v. Thomas*, 369 Md. 202, 798 A.2d 566 (2002) and *Sweet v. State*, 371 Md. 1, 806 A.2d 265 (2002), holding that *voir dire* questions on guns, fear of guns, strong feelings about guns or gun owners, or about gun control (in the case of a double murder committed with a handgun) were purely discretionary?

2. Should this Court review the decision of the Court of Special Appeals, when in a reported decision, the Court held that a motion to suppress a confession as involuntary must virtually always be denied where the defendant declines to testify, and that the suppression judge may infer from the defendant's election that the statement was voluntary?

3. Did the trial court err in denying Petitioner's motion to suppress his statement when, as a matter of written agreement between the Prince George's County Police and Sheriff's Department, Petitioner upon his extradition from Texas was transported directly to the headquarters of the Homicide Unit, rather than to a facility at which he could have been presented to a commissioner, and where the suppression court failed to give special heavy weight to this purposeful delay?

ECF No. 7, Ex. 11 at 1-2. On April 12, 2004, the Court of Appeals of Maryland denied Uzzle's

Petition for a Writ of Certiorari. ECF No. 7, Ex. 12..

On February 11, 2005, Uzzle filed a Petition for Post-Conviction Relief in the Circuit

Court for Prince George's County which, as amended by his counsel, raised claims of ineffective

assistance of trial counsel for failing to: 1) object to a discovery violation and Kenneth Smith's

testimony regarding Smith's lie detector test; 2) move to suppress his statement, (a) for lack of prompt presentment, and (b) because the statement was made after the right to counsel had attached; and 3) challenge the voluntariness of his statement at trial based on lack of prompt presentment. ECF No. 7, Exs. 13-17.

On May 20, 2010, the post-conviction court held a hearing on the Petition. ECF No. 7 at 9. Uzzle's trial counsel testified that he had sought to suppress the two statements. ECF No. 7, Ex 16 at 11. Trial counsel stated that he considered Uzzle's first statement to be "totally exculpatory," and recalled the second statement "was not particularly inculpatory." *Id.* at 12, 15. Trial counsel explained that he moved to suppress the second statement as a violation of Uzzle's right to counsel in a written motion, though he did not articulate the claim on oral argument at the motions hearing. *Id.* at 13-14. Following the motions hearing, trial counsel made a deal with the State not to challenge the voluntariness of Uzzle's statement at trial in exchange for the State's agreement not to attempt to develop the circumstances surrounding Uzzle's apprehension in Texas. *Id.* at 19-20, 49-51.

### Petitioner's Claims

Uzzle presents the following claims of ineffective assistance of counsel in his Petition for federal habeas relief: 1) trial counsel was ineffective for failing to move to suppress Uzzle's statement to the police given after the attachment of Petitioner's Sixth Amendment right to counsel; 2) trial counsel was ineffective for failing to object to a discovery violation relating to testimony by a state witness regarding a lie detector test; 3) trial counsel was ineffective for failing to argue to the jury that Uzzle's statement should be considered involuntary due to the failure of the state to present Uzzle to a judicial officer of the district court; 4) trial counsel was ineffective for failing to argue that Uzzle's statement should be suppressed due to the failure of

the state to promptly present Uzzle to a judicial officer;  and  5) trial counsel was ineffective for failing to object to testimony by a state witness regarding a lie detector test.  ECF Nos. 1 at 5, 7; ECF No. 10 at ii-iii.

Petitioner's claims are succinctly framed by Respondents as ineffective assistance of trial counsel for: (1) failing to move to suppress his statement on the basis that (a) it was taken in violation of his right to counsel, and (b) it was taken in violation of his state law right to prompt presentment; (2) failing to argue to the jury the lack of prompt presentment should be given heavy weight in assessing the voluntariness of his statement; and (3) failing to object to a discovery violation by the State.  *See* ECF No. 7 at 10.

### Procedural Default

This Petition is reviewed subject to the doctrine of procedural default which ensures "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276; *see also* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of remedies available in state court).  Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies.  *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); *Murray v.* Carrier, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46–47 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 482 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

When a claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show 1) both cause for the default and

6

prejudice that would result from failing to consider the claim on the merits, or 2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.*, the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995); *Murray*, 477 U.S. at 495–96; *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488) (internal quotation marks omitted).

## Discussion

Uzzle's claims will be analyzed under the statutory framework of the federal habeas statute at 28 U.S.C. § 2254 which sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, __U.S. __, __, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* __U.S.__, 134 S. Ct 1697, 1702 (2014) (*quoting Harrington v. Richter*, __U.S. __, __, 131 S. Ct. 770, 786-87 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis of 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, (2010) (quoting *Williams*, 529 U.S. at 411). "Rather, that application must be objectively unreasonable." *Id.* Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (internal quotation marks and citation omitted).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (internal quotation marks and citation omitted).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where

8

the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379 (*quoting* 28 U .S.C. § 2254(e)(1)).

In order to establish ineffective assistance of counsel, it must be shown that 1) counsel's performance was deficient, and 2) the performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below "an objective standard of reasonableness." *Id.* at 688.

To satisfy the first part of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687 (internal quotation marks and citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 689. A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. A defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 131 S.Ct. at 790 (internal quotation marks and citation omitted). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review

is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable -- the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

A showing of prejudice requires that 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and 2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694. "The benchmark [of an ineffective assistance claim] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *see Harrington*, 131 S.Ct. at 787–88 (citing *Strickland*, 466 U.S. at 687). A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Strickland*, 466 U.S. at 697. Uzzle's claims of ineffective assistance of counsel will be analyzed under these standards.

### 1. Claim that Trial counsel was Ineffective for Failing to Move to Suppress Uzzle's Statement to the Police Based on a Violation of Uzzle's Right to Counsel

Uzzle claims that trial counsel was ineffective for failing to move to suppress his statement to the police on the grounds that the statement was taken in violation of his right to counsel. ECF No. 1 at 5, 7). He asserts his right to counsel attached when he waived extradition in Texas, and thus, his right to counsel was violated when the police interrogated him without counsel when he returned to Maryland. *Id.*

In its opinion denying this claim, the state post-conviction court held:

> In *Uzzle,* during the Post Conviction hearing, trial counsel testified that a violation of the Sixth Amendment argument was submitted in the Motion to Suppress; however, this argument was not presented orally. In counsel's written motion he argued the attachment of counsel and the exclusion of defendant's second statement based on a Sixth Amendment violation. He further testified that, it was his understanding that a judge reviews the totality of the evidence presented in the hearing and the written arguments from both sides before making a decision.

> Thus, trial counsel effectively developed a factual basis for a Sixth Amendment violation and raised those arguments in Petitioner's written motion. Counsel's performance is well within reasonableness and professional norms. The fact that counsel did not orally present this argument to the court, alone, is not a basis for asserting an ineffective counsel claim. The argument was presented to the court in defendant's written motion and after review by the court, the motion was denied.

> . . . .

> This Court finds that the tactical decisions of counsel were effective. Trial counsel performed to the best of his ability and within professional norms. The strategic planning and the investigatory process utilized by him provided reasonable assistance. All obligations were met whether the arguments were presented to the court orally or written. Trial advocates cannot assure or guarantee that every accused represented will go free and they are not required by law to do so. After a review of the totality of the circumstances, this Court finds that trial counsel was well within the norms of professional competency in rendering effective assistance.

ECF No. 7, Ex. 19 at 3-6.

Uzzle claims that the post-conviction court did not reasonably consider the totality of the evidence. ECF No. 10 at 9, 11. He notes that at no time during the suppression motion or post-conviction proceedings did the Court hear testimony as to the "full name" of Petitioner's counsel in Texas, Public Defender Ted Sansom.[5]  *Id.*  Samson did not testify at Uzzle's Maryland state post-conviction hearing and there was no evidence presented that he is a member of the

---

[5] On September 23, 1997, Uzzle, then represented by Ted Sansom, plead guilty to possession of marijuana in the 382nd Judicial District of Texas. ECF No. 10 at 9, Ex. 1.

Maryland Bar. *Id.* Counsel for the State of Maryland told the post-conviction court that there was "no indication" that the representation was intended to continue "beyond the purpose of the simple and straight hearing where [Uzzle] waived his rights to object to extradition." ECF No. 7, Ex. 16 at 6.

Uzzle also argues that the ruling in *Brewer v. Williams*, 430 U.S. 387 (1977), is dispositive of the issue he presents. In *Brewer*, a warrant was issued for Robert Williams' arrest. 430 U.S. at 399. Brewer was advised by his arraignment counsel not to make any statements to police officers who were to transporting him and the police officers agreed not to question the prisoner during the trip. *Id.* During the trip. Williams expressed no willingness to be interrogated in the absence of an attorney but instead stated several times that he would tell the whole story after seeing his lawyer. *Id.* at 393-94. One of the police officers, knowing that Williams was deeply religious, attempted to obtain incriminating remarks from him by stating that he felt they should stop and locate the girl's body because her parents were entitled to a Christian burial for her. *Id.* Williams made several incriminating statements during the trip and directed the police to the body. *Id.* at 393. Williams was tried and convicted of murder, over his objections to the admission of evidence relating to or resulting from any statements he made during the automobile ride. *Id.* at 394. The Supreme Court held that Williams was deprived of his Sixth Amendment right to assistance of counsel. *Id.* at 406.

This case presents a different -- although related issue -- whether trial counsel was constitutionally deficient for failing to seek to exclude oral statements. The post-conviction court found that defense counsel had in fact moved to suppress Uzzle's statement on several grounds, including the ground that the statement was taken in violation of Uzzle's right to counsel. *See* ECF No. 7, Ex. 19 at 3-6; *see also* ECF No. 7, Ex. 16 at 11-12, 14, 21. The trial

court denied the motion to suppress, and that ruling was affirmed on direct appeal.  ECF No. 7, Ex. 10.

Assuming, for the sake of argument, that trial counsel's representation was deficient, Uzzle falls short of satisfying the second prong of the *Strickland* test of showing the statements prejudiced the outcome of his trial.  Neither statement was a confession of guilt.  The Court of Special Appeals of Maryland observed Uzzle's statements consisted only of "several brief oral responses/and or emotional reactions to several questions asked of the appellant by a police interrogator."  ECF No. 7, Ex. 10 at 15.  Indeed, Uzzle consistently denied in both his statements that he committed the murders.  *Id.* at 15-20.  Trial counsel told the post-conviction court that he viewed the first statement as exculpatory and the second statement as not inculpatory.  ECF No. 7, Ex. 16 at 12, 16.  Counsel also told the post-conviction court that because the October 3, 1997, statement was consistent with Uzzle's claim of innocence, its admission benefitted his client by placing his denial of involvement before the jury without Uzzle having to testify in the case.  *Id.* at 43-48.  The admission of the statement did not undermine the reliability of Uzzle's trial, and thus, even assuming that counsel's representation fellow below objective standard of reasonableness, the *Strickland* standard is not satisfied.

For these reasons the Court concludes the state court's determination was neither "contrary to or involved an unreasonable application of clearly established Federal Law, as determined by the Supreme Court," nor based on an "unreasonable determination of the facts in light of the evidence presented at the State court proceeding."  Habeas relief will be denied as to this claim.

### 2. Trial counsel was Ineffective for Failing to Move to Suppress a Statement Based on a Violation of Uzzle's Right to Prompt Presentment

Uzzle next faults trial counsel for failing to move to suppress his second statement as involuntary based on a violation of his state law right to prompt presentment. The post-conviction court rejected this claim, stating:

> Petitioner was initially arrested in Texas and transported back to Maryland. Upon his return, he was taken to the Prince George's County Police's Criminal Investigation Division (CID) where he was secured in an interview room at 2 p.m. on October 3, 1997, and was returned to the Sheriff's Department shortly before 1 a.m. on October 4, 1997. [footnote omitted] The record demonstrates that he was secured at CID for no more than twelve (12) hours. Petitioner made his statement after 9:00 p.m. on October 3rd and was taken to a District Court Commissioner four (4) hours later. During his time at CID, he was questioned and repeatedly denied culpability for he[sic] murders.
>
> Moreover, the statement that was obtained was arguably not inculpatory. During the Postconviction Hearing, trial counsel testified that in his opinion the statement was generally exculpatory. If the purpose was to interrogate Petitioner to obtain an inculpatory statement, then it was largely unsuccessful. Accordingly, this Court finds that Petitioner was properly presented to the District Court Commissioner, and that there are insufficient facts alleged to demonstrate that there was any undue delay. Therefore, this allegation is denied.

ECF No. 7, Ex. 19 at 7.

Respondents argue that this claim is premised entirely on the state post-conviction court's application of state law, specifically Maryland Rule 4-212(f), and the state court's conclusion that trial counsel complied with state law as it existed at the time of Uzzle's trial, thus foreclosing federal habeas corpus relief as to this claim. ECF No. 7 at 25; *see Estelle v. McGuire*, 502 U.S. 62, 67-75 (1991) (stating federal habeas relief is not available for errors of state law, and that it is not the province of a federal habeas corpus court to reexamine a state court's acknowledgment of a state law issue).

14

Maryland Rule 4-212(f) provides that, "[w]hen a defendant is arrested without a warrant, the defendant shall be taken before a judicial officer of the District Court without unnecessary delay and in no event later than 24 hours after arrest." *See also* Md. Code Ann., Cts. & Jud. Proc. Art., § 10-912 (2006 Repl. Vol.).   Subsequent to Uzzle's trial, the Court of Appeals of Maryland interpreted this provision to state "that any deliberate and unnecessary delay in presenting an accused before a District Court Commissioner, in violation of Rule 4-212(e) or (f) must be given very heavy weight in determining whether a resulting confession is voluntary, because that violation creates its own aura of suspicion." *Williams v. State*, 375 Md. 404, 434 (2003); *see also Facon v. State*, 375 Md. 435 (2003).   Given the state of the law at the time of trial, the post-conviction court determined there was no undue delay in presentment and counsel's representation was not ineffective as alleged.

As noted above, Uzzle maintained his innocence throughout the interview, and the state court determined Uzzle demonstrated no prejudice as a result of the statement he made. Respondents aver that Uzzle fails to show that the suppression court, given the state of Maryland law at the time, would have ruled differently on the voluntariness of the statement had defense counsel advanced a prompt presentment claim.

Under the deferential standard accorded to state court rulings on federal habeas review, the state court's rejection of this ineffective assistance of counsel claim constituted a reasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d). The post-conviction court's determination will not be disturbed.

3.  **Claim that Trial Counsel was ineffective for Failing to Argue to the Jury that Uzzle's statement was involuntary on the Grounds of Lack of Prompt Presentment.**

Uzzle argues that trial counsel was deficient for failing to argue to the jury that Uzzle's second statement should be considered involuntary because Uzzle was not presented promptly to a commissioner.  This claim was not raised by Uzzle in his application for leave to appeal the denial of state post-conviction relief;[6] thus, the claim is procedurally defaulted.  The post-conviction court also noted that because the second statement was consistent with Uzzle's claim of innocence, its admission benefitted the defense by placing Uzzle's denial of involvement before the jury without him having to testify in the case.  ECF No. 7, Ex 16 at 43-48.

Uzzle disputes the assertion of procedural default in light of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), but provides little discussion in support.  *See* ECF No. 10 at 4, 30.  As a general rule, a claim of ineffective representation that has not itself been presented to and exhausted in the state courts cannot serve as cause for the procedural default of additional claims.  *See Murray v. Carrier*, 477 U.S. 478, 488–89 (1986).  "[A]n attorney's ignorance or inadvertence in a post conviction proceeding does not qualify as cause to excuse a procedural default." *Coleman* , 501 U.S. at 754–55.

In *Martinez*, the Supreme Court announced a narrow exception to that rule.  *See* 132 S.Ct. at 1315.  The Court held that "[i]nadequate assistance of counsel [or no counsel] at initial-review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  *Id.*  The Court defined "initial review proceedings" as the "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id.*  In addition, "to overcome the default, a prisoner must also demonstrate that the underlying

---

[6] ECF No. 7, Ex. 20.

ineffective assistance of trial counsel claim is a substantial one, which is to say the prisoner must demonstrate that the claim has some merit." *Id*. at 1318.

The *Martinez* exception does not apply here. As a factual matter, the claim was not raised by Uzzle in the application for leave to appeal denial of the post-conviction court's determination. Further, for the reasons discussed herein, Uzzle does not demonstrate his underlying ineffective assistance claim is substantial. Uzzle's claim fails as a matter of fact and law, is procedurally defaulted, and does not provide grounds for federal habeas relief.

### 4. Claim that Trial Counsel was Ineffective for Failing to Object to a Discovery Violation Relating to Testimony by a State Witness Regarding a Lie Detector Test and the State Court's Determination that Trial Counsel's Conduct was not Deficient and Prejudicial Constituted an Unreasonable Application of Federal Law.

Uzzle asserts that trial counsel was derelict for failing to object to a discovery violation relating to a State witness and a lie detector test. Prior to trial, defense counsel filed motions for discovery and inspection.[7] ECF Nos. 7, Ex. 2; 10 at 18-19. At the pre-trial motions hearing, trial counsel stated that he had been told state's witness Kenneth Smith was administered and failed a voice stress test.[8] ECF No. 7, Ex 2 at 8. The parties agreed the defense was entitled to the test report. *Id*. Defense counsel indicated he hoped the report would be provided to him within the week. *Id*. On September 21, 1998, prior to *voir dire*, trial counsel stated he had yet to receive a copy of the voice stress analysis report, and asked that the information be provided to him before he cross-examined Smith. ECF No. 10, Ex. 2 at 19. Uzzle argues that,

---

[7] In his third supplement to the state post-conviction petition, Uzzle argued the voice stress analysis results were discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963), and by failing to raise an objection, trial counsel denied Uzzle the ability to receive a new trial. ECF No. 7, Ex. 15 at p. 2.

[8] A voice stress analysis is a type of lie detector test. The test is designed to measure changes in voice patterns caused by stress. *See* http://www.nij.gov/journals/259/pages/voice-stress-analysis.aspx.

"[n]otwithstanding the attempt at cross examining Smith, Detective McClelland['s] [the official who administered the test] approach at administering the [s]tress test was a subject of concern as well. Without asking the trial court to compel the State to provide the information, the results, the details, including the date and time of the test, the kinds of questions asked and the responses by Smith thereto, Petitioner lost a fair opportunity to confront witnesses." ECF No. 10 at 19.

During cross-examination Kenneth Smith blurted out that he had taken a voice stress analysis. ECF No. 7, Ex 3 at 156. Trial counsel informed the Court that he did not have the results of this test, and wanted the report. *Id.* Uzzle further notes that the trial court offered to suspend Smith's cross-examination until after the defense obtained the results, but trial counsel opted instead to the continue the examination with the right to recall Smith if necessary after the reported results were obtained. *Id.* Uzzle posits that had counsel objected, sanctions such as striking Smith's testimony would have been available. ECF No. 10 at 19.

This argument was rejected by the state post-conviction court:

> While this Court agrees that Smith was an important witness, it is also clear, from the record, that defense counsel's cross-examination directly confronted his credibility. Further, this was an isolated statement, unresponsive to the initial question and whatever inference could be drawn cast a negative light on the state's witness. The tactical decision of counsel to reveal the witness's change in story cannot be held as deficient performance or unfairly prejudicial. Once Smith's inadvertent and unresponsive blurt occurred, trial counsel purposefully elicited that the police did not believe his first statement and that he may have changed his story to one that would exonerate him from any wrongdoing. "When the prosecutor's questioning inadvertently elicits a witness's reference to a polygraph test, there is cause for mistrial if, but only if, the reference to the test raises an inference about the result that substantially prejudices the defendant's case." *Id.* at 660 (citing *State v. Edwards*, 412 A.2d 983, 987 (Me. 1980). In the instant case substantial prejudice did not occur as a result of the trial strategy.

ECF No. 7, Ex. 19 at 3-5. [9]

As the state post-conviction court explained, defense counsel handled the witness'
inadvertent and unresponsive testimony effectively by questioning him about changing his
version of the events. ECF No. 7, Ex. 3 at 157-160. Trial counsel's response to the witness'
testimony was strategic, and the testimony elicited supported the inference that the State's
witness had misinformed the police, thereby benefitting defense efforts to impeach the witness'
credibility and his identification of Uzzle as the shooter. ECF No. 7, Ex. 16 at 39-40. On this
basis, the Post-Conviction Court concluded Uzzle would not have been entitled to a mistrial, and
counsel was not deficient failing to ask for one. There was no prejudice because a request for a
mistrial would have been denied. The state court's ruling is entitled to deference and is
supported by the record. Accordingly, the state court's ruling was a reasonable application of
*Strickland* which forecloses relief under 28 U.S.C. § 2254(d).

### Certificate of Appealability

A Certificate of Appealability may issue "only if the applicant has made a substantial
showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this burden, an
applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that)
the petition should have been resolved in a different manner or that the issues presented were
'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484
(2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Uzzle has failed to make a
substantial showing he was denied a constitutional right, and this court finds that reasonable

---

[9] The post-conviction court rejected Uzzle's argument that he was entitled a new trial under the
holding in *Pantazes v. State of Maryland*, 141 Md. App. 422 (2003, which stated that if there was
a reasonable possibility that the jury did consider the lie detector test, then it was required to
reverse, because *Pantazes* was not the legal standard at the time of trial. ECF No. 7, Ex. 19 at 5.

jurists would not find the denial of habeas relief in this case debatable.  Accordingly, a Certificate of Appealability shall not issue.

## CONCLUSION

For the foregoing reasons, the Court determines the Petition provides no grounds for habeas corpus relief for ineffective assistance of trial counsel.  A separate Order denying the Petition and declining to issue a Certificate of Appealability follows.

_9/29/14_
Date

William D. Quarles, Jr.
United States District Judge

20